CENTRAL TELEPHONE COMPANY
OF VIRGINIA, a Virginia
Corporation, Plaintiff,

v.

JOHNSON PUBLISHING CO., INC., a
Texas Corporation, Defendant.

Civ. No. 80–A–1225.

United States District Court,
D. Colorado.

Oct. 15, 1981.

Kyle W. Rost, Denver, Colo., P. Phillips Connor and Kevin W. Guynn, Chicago, Ill., for plaintiff.

W. David Pantle, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ARRAJ, District Judge.

Central Telephone Company (Central) brought this action against Johnson Publishing Co. (Johnson) claiming that Johnson infringed its copyright covering telephone directories published for the area including Martinsville, Virginia, in the years 1976 through 1979. Central alleges that Johnson copied material from Central's directories and published this material as a part of Johnson's community directories for the years 1977, 1978 and 1980. Jurisdiction is conferred by 28 U.S.C. § 1338(a) (1976).

The case is now before me on cross motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, it provides that summary judgment "may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Under Rule 56(e) a party opposing a summary judgment motion properly made and supported "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

As to plaintiff's claims that defendant caused its copyrights to be infringed, defendant has failed to set forth by affidavit, deposition, answer to interrogatory or admission that any genuine issue of fact exists for trial. On the other hand, material issues of fact do remain unresolved as to the amount of damages plaintiff has suffered due to the copyright infringement. As to defendant's claim that plaintiff did not have copyright protection for two of the years in question, defendant has failed to establish that it is entitled to summary judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment will be granted in part and denied in part, as explained below, and defendant's motion

for summary judgment will be denied. The case will proceed to trial on the issue of damages only, as contemplated by Rule 56(c).

## BACKGROUND

In the normal course of business, plaintiff Central compiles, prepares, publishes and distributes telephone directories covering the geographical areas in which it also provides telephone service, including the Martinsville, Virginia, area. Plaintiff's telephone directories are printed partly on white pages and partly on yellow pages. The portion printed on white pages lists in alphabetical order the names, addresses and telephone numbers of plaintiff's customers who elect to have their listings published. The portion printed on yellow pages lists plaintiff's business customers alphabetically under appropriate business classifications and contains advertisements of various sizes purchased by some customers.

In 1976, defendant Johnson entered into an agreement with the Basset Printing Co. by which defendant undertook to complete the work begun by Basset in the production of a community directory for the Martinsville, Virginia, area. While there are other distinctions, a community directory is a publication that lists additional information, such as name of spouse, place of employment, etc., beyond the information listed in the telephone directory about the people residing, in this instance, in the Martinsville area. After concluding the agreement with Basset, defendant Johnson took steps to complete the directory including hiring people from the Martinsville area to be enumerators. The enumerators were given survey forms on cards to fill out. In this process, the enumerators used the initial work of Basset and plaintiff's then current telephone directory to complete the survey cards with the name and telephone number of each of the listings as they appeared in the white pages of the Central directory. The enumerators were instructed to telephone each of the listings and to fill in other information as outlined by the survey cards. The completed cards were sent to defendant Johnson's business headquarters in Colorado where they were keypunched and sorted alphabetically. Concurrent with this work by the enumerators, Johnson salesmen went door to door to solicit advertisements from businesses for a yellow page section to be published as a part of the 1977 community directory.

After the survey card information was stored in a computer data base, personnel in defendant's compiling department compared a printout with plaintiff's then current 1976 directory. Any additional listings contained in the Central directory but not on the printout list were added. No attempt was made to verify the additional listings. Thereafter, the listed information and the orders for yellow page advertisements were typeset and the 1977 community directory was printed. After printing, the directory was delivered to the Martinsville, Virginia, area for distribution.

In 1977, defendant Johnson again hired enumerators from the Martinsville area. They were supplied with a computer printout of the listings assembled for the 1977 community directory and blank survey cards. The enumerators were instructed to telephone the numbers listed on the computer printout and determine whether the information was current, making note of changes and additions on the survey cards. Similarly, defendant's salesmen again solicited businesses in the Martinsville area for advertisements in the upcoming 1978 community directory. Thereafter, this new information was merged at defendant's headquarters with the data from the previous year to provide an updated data base. Defendant's personnel compared a printout of the new data base with plaintiff's then current 1977 directory and additional listings contained in plaintiff's directory were added without an attempt to verify the additions. Defendant Johnson then printed and distributed its 1978 community directory for the Martinsville, Virginia, area.

No community directory was published by the defendant for the Martinsville area in 1979. However, during 1979 defendant Johnson again hired enumerators and sent

salesmen to Martinsville. They were instructed to follow the same procedure as used in 1977, described above. In addition, defendant's compiling department followed the same procedure for updating the data base and then referred to plaintiff's current 1979 directory for obtaining additional listings. However, unlike previous years, these additional listings were returned to the enumerators for verification. Soon thereafter, defendant's 1980 city directory for Martinsville was printed and distributed.

■ It is undisputed by the parties and well settled by the courts that two elements are necessary to establish the case of copyright infringement: first, the plaintiff must show ownership of a valid copyright and, second, copying of the material by the defendant. M. Nimmer, *Nimmer on Copyright*, § 13.01 (1981) [hereinafter cited as Nimmer]; *American Chemical Society v. Dun-Donnelley Publishing Corp.*, 202 U.S. P.Q. 459, 462 (N.D.Ill.1979).

## THE WHITE PAGES

1. *Ownership*

■ Plaintiff tenders the certificates of copyright registration issued by the United States Copyright Office as proof of its copyright ownership. A copyright registration certificate is prima facie evidence of the facts stated therein, including evidence of ownership. 17 U.S.C. § 210 at 962 (1976) (1909 Act); 17 U.S.C. § 410(c) (Supp.III 1979) (1976 Act).

Defendant does not deny the facial validity of the certificates, but alleges instead, in defense and under its separate Motion for Partial Summary Judgment, that the copyright is defective as to plaintiff's 1976 and 1977 directories, due to improper placement of the copyright notice. Johnson contends that under the law applicable to these two directories, the notice of copyright was not upon "the title page or the page immediately following" as directed by 17 U.S.C. § 20 (1976) (1909 Act).*

■ The copyright notice for both directories was placed on the inside (backside) of the front paper cover. Under the 1909 Act, the placing of the copyright notice in the wrong location results in a loss of copyright protection. *Bell v. Combined Registry Co.*, 397 F.Supp. 1241 (N.D.Ill.1975); *Foreign Car Parts, Inc., v. Auto World, Inc.*, 366 F.Supp. 977 (M.D.Pa.1973). To determine, therefore, whether this placement of the notice complies with the 1909 Act, the scope of the terms "title" and "title page" must be examined.

■ The title registered with the United States Copyright Office is prima facie proof of the proper title of the work. See 17 U.S.C. § 210 (1976) (1909 Act). The respective titles for the directories in question, as designated on the copyright certificates, are "May, 1976 Martinsville, Virginia 76570" and "May, 1977 Martinsville, Virginia 76570." Defendant asserts these titles are improper since an appropriate title must include a description of the work, in this case the designation "telephone directory." Other courts, however, have found titles to be as designated on the copyright registration certificate even though these titles lacked a description of the work. See, e. g., *OA Business Publications, Inc., v. Davidson Publishing Co.*, 334 F.2d 432 (7th Cir. 1964) (newspaper entitled "Daily Office Appliances—NSOEA Convention Edition."); *Booth v. Haggard*, 184 F.2d 470 (8th Cir. 1950) (unspecified type of book entitled "1948–1949, Kassath County, Iowa, TAM Service.") In a case quite similar to the one at bar, the court determined the title of a telephone directory to be "Little Rock—North Little Rock and suburban areas." *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900 (W.D.Ark.1974). Therefore, I find as a matter of law that the titles of the 1976 and 1977 directories published by the plaintiff to be those titles as

---

* Effective January 1, 1978, the Copyright Revision Act of 1976 eliminated this strict requirement and now provides that the notice shall be affixed "in such manner and location as to give reasonable notice of the claim of copyright." 17 U.S.C. § 401(c) (Supp.III 1979). Defendant concedes that his motion does not reach the 1978 and 1979 directories of the plaintiff.

designated upon the copyright registration certificates.

■ However, an additional problem is presented. The titles of plaintiff's 1976 and 1977 directories are not found on any page within the directories or even on the front cover of the directories. Instead, these titles are found only on the outer spine portion of each directory. Consequently, defendant's attack on the validity of plaintiff's copyright can be narrowed considerably to whether the spine portion of a directory's cover can be considered a title page.

The title page is "the first page in a book devoted in whole or in part especially to the title of the work." Nimmer, § 7.10[B] at 7–56. A cover of a book may serve as a title page if it is the only page displaying the title. *Neal v. Thomas Organ Co.*, 325 F.2d 978 (9th Cir. 1964). Defendant asserts, however, that the spine is not part of a cover, and therefore not a page within the meaning of the statute. Contrary to this position, it is almost too elemental to note that a cover is "a binding or case for a book or the comparable outer part of a pamphlet or magazine." Webster's Third New International Dictionary 524 (1976). Thus the cover of a book includes the entire material encasing the contents, including the backbone or spine portion. Additionally, as one looks at a telephone directory standing on a shelf or laying on a table with other books, the spine is in fact the most visible portion of the cover.

■ I find as a matter of law that the spine of a directory containing the title is a part of the directory's cover and, within the terms of the statute, the cover of a telephone directory may be considered the title page. The copyright notice placed inside the front cover of plaintiff's 1976 and 1977 telephone directories complies with 17 U.S.C. § 20 (1976) (1909 Act). Plaintiff's ownership of a valid copyright on each of its directories is clearly established.

### 2. *Copying*

■ The second element in a case for copyright infringement is copying by the defendant. This element may be shown by either an admission of copying by the defendant, or by the indirect route of proving access to the directory and substantial similarity between the plaintiff's and defendant's works.

■ After plaintiff served notice on defendant to take its deposition, defendant designated Mr. Douglas Erion, President, and Mr. Richard DeWayne, Vice President for Field Operations, as its representatives. At the deposition, both Erion and DeWayne testified that, for the defendant's first directory compiled in 1976, Johnson used the plaintiff's telephone directory as an initial source for its compilation. Erion responded in a similar manner to written interrogatories. Defendant's employees (the enumerators) would look through the plaintiff's directory and "call every listing in the Martinsville telephone book which was within the area to be covered and obtain, if possible, the further information needed for the Community Directory (such as name of spouse, place of employment, and home ownership)." Defendant's Response to Interrogatory No. 8. See Erion Dep. at p. 30–31; DeWayne Dep. at p. 28.

These statements constitute an admission by the defendant that plaintiff's directory was copied. Courts recognize that a compiler of a directory may make fair use of an existing compilation if he first makes an independent canvass, then merely compares and checks his own compilation with that of the copyrighted publication and publishes the result after verifying the additional items derived from the copyrighted publication. *Northwestern Telephone Systems, Inc., v. Local Publications, Inc.*, 208 U.S.P.Q. 257, 258 (D.Mont.1979). Since the copyright covers the compilation of the information and not the individual names and addresses, if there is substantial copying from the plaintiff's work without an independent canvass initially, the resulting work will be an infringement even when the defendant later verifies the material by checking the plaintiff's original sources. Nimmer, § 8.01[E]; see *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.*, 281 F. 83

(2d Cir.), *cert. denied*, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922). Use of other sources or addition of other material to the copied matter does not relieve the defendant from liability. *Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir. 1977). Similarly, the fact that the copying is alleged by the defendant to be *de minimus* does not alleviate liability, but is only relevant to the question of damages. *National Research Bureau, Inc., v. Kucker*, 481 F.Supp. 612 (S.D.N.Y.1979).

■ An alternative ground for proof of copying by the defendant is the presence of fictitious listings inserted into plaintiff's directory and later present in defendant's directory. Here, plaintiff inserted three fictitious listings in its 1977 directory. If these listings were called, a phone would ring but neither person nor recording would answer. These listings later appeared in defendant's directories and defendant again does not deny it copied these listings. The courts have regarded the existence of common errors in two similar works as the strongest evidence of copying. Nimmer, § 13.03[C]; *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900 (W.D.Ark. 1974).

Defendant asserts that 16 additional fictitious listings were included in plaintiff's 1978 directory and the fact that these listings were not in defendant's next directory shows that it did not copy. If these 16 listings were called, a recording would answer that the number was no longer in service. Obviously, the absence of these 16 listings does not deny that defendant copied the three listings inserted earlier. Instead, this absence could show that the defendant had begun to verify all listings in plaintiff's directory without the wholesale addition to its directory as done earlier. As mentioned above, mere verification, without an independent canvass first, does not mitigate the reliance on plaintiff's work. See Nimmer, § 8.01[E].

### THE YELLOW PAGES

Plaintiff Central claims it owns the copyright also on the yellow page advertisements and the business customers whose advertisements appeared in its directory could not give a second publisher, such as the defendant, the right to reproduce those advertisements. Defendant, in response, contends that the advertisers, whose artwork, trademarks, company names and other business information appear in the advertisements, are the owners of the right to reproduce the advertisements.

■ When yellow page advertisements, published earlier in a copyrighted directory, are published later in another directory, the second directory will not usually infringe the first directory's copyright. In the absence of an agreement to the contrary, the ownership of, and the copyright on, the advertisements is not in the publisher of the first directory but resides in the advertiser who paid for preparing the advertisement and for its publication. See *Jacobs v. Robitaille*, 406 F.Supp. 1145 (D.C. N.H.1976). If the opposite result were reached, the advertiser would be barred from reproducing his advertisement and the information therein without the first publisher's consent. Even when the publisher has created and prepared the advertisement on behalf of its customer, the advertiser is still the copyright owner. *Electronic Publishing Co. v. Zalytron Tube Corp.*, 376 F.2d 592 (2d Cir. 1967) (advertisements in trade catalog); *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (2d Cir. 1966) (newspaper advertisements).

■ Plaintiff relies on *Southwestern Bell Telephone, supra*, and *Jeweler's Circular Publishing, supra*, to support its position that advertisements may not be copied. Both cases, however, are distinguishable from the case at bar. In both situations, there was some evidence that the second publisher did not perform an independent canvass in obtaining the advertisements. Instead, clippings or artwork from the first publisher was used. In this case, there is no dispute that defendant Johnson hired salesmen to make an independent canvass of the Martinsville business community. In the

course of this canvass, clippings of earlier yellow page advertisements were used only as a source and example of the information the business customer wished to advertise. No copyright was infringed in this instance, for it is plaintiff's compilation which receives copyright protection, not the individual advertisements. To the extent the reasoning of *Southwestern Bell Telephone, supra*, still remains to the contrary, I decline to follow it.

## CONCLUSION

Upon the foregoing, I find, as a matter of law, that plaintiff Central Telephone Co. has valid copyright protection on its 1976 and 1977 telephone directories. Based upon the absence of a genuine issue of material fact, I find that defendant Johnson Publishing Co. has infringed the plaintiff's copyright on the listings in the white pages of plaintiff's 1976, 1977 and 1979 telephone directories. I also find, as a matter of law, that plaintiff does not possess the copyright protection on the advertisements in the yellow pages of plaintiff's 1976, 1977 and 1980 telephone directories, and, therefore, it is unable to state a claim for copyright infringement based on the copying of yellow page advertisements. It is therefore

ORDERED that, as a matter of law, defendant Johnson Publishing Company's motion for summary judgment concerning the validity of the copyright on plaintiff's 1976 and 1977 telephone directories is denied. It is further

ORDERED that there is no genuine issue of material fact concerning the validity and infringement of plaintiff Central Telephone Company's copyright on its 1976, 1977 and 1979 telephone directories. Therefore, plaintiff's motion for summary judgment based on copyright infringement of the white page listings is granted, and concerning the advertisements in the yellow pages, is denied. It is further

ORDERED that the trial date of November 23, 1981 will be maintained to determine damages, if any, to which the plaintiff is entitled because of the copyright infringements.

