COUNTRY KIDS 'N CITY SLICKS,
INC., Plaintiff–Appellant,

v.

Vicki SHEEN, Bill Sheen, Ladawn Bragg, and Flake Wells, doing business as Carousel Kids, Defendants–Appellees.

No. 94–6025.

United States Court of Appeals,
Tenth Circuit.

March 5, 1996.

Eric S. Gray of Gray, Goresen, Moriarty & Wright, Oklahoma City, Oklahoma (Thomas P. Goresen with him, on the briefs) for Plaintiff–Appellant.

Kenneth L. Buettner of McAfee & Taft, Oklahoma City, Oklahoma, for Defendants–Appellees.

Before BRORBY, EBEL, Circuit Judges and BRATTON,* Senior District Judge.

EBEL, Circuit Judge.

The instant appeal arises from the denial of a preliminary injunction in an action for copyright infringement. In this appeal, Plaintiff–Appellant Country Kids 'N Slicks, Inc. ("Plaintiff") contends that the district court erred in ruling for purposes of the preliminary injunction that Defendants–Appellees Vickie Sheen, Bill Sheen, Flake Wells, and LaDawn Bragg, d/b/a Carousel Kids (collectively "Defendants") did not establish infringement on its copyrights describing certain wooden dolls modelled after the traditional paper dolls. Specifically, Plaintiff argues that the district court erred as a matter of law by: (1) holding that the medium, size and shape of the dolls are not copyrightable features; (2) misinterpreting the standard for copyright infringement by requiring Plaintiff to show that the Defendants' dolls were a "virtual copy" of Plaintiff's dolls; and (3) requiring that Plaintiff establish the likelihood of bankruptcy in order to meet the irreparable injury requirement for issuing a preliminary injunction. We AFFIRM the district court's holding that the medium, size and shape of the dolls are not copyrightable features. However, with regard to other features of the dolls, we cannot discern whether the district court utilized the correct legal standard for copyright

* Honorable Howard C. Bratton, Sr., Senior United States District Judge for the District of New Mexico, sitting by designation.

infringement or properly determined that Plaintiff was entitled to a presumption of irreparable harm in the event of copyright infringement. Therefore, on those issues we VACATE the judgment of the district court and REMAND this case for further proceedings.

## BACKGROUND

Plaintiff, who does business under the name Crayon Kids, is a wholesale doll manufacturer that sells wooden dolls created by Country Kids 'N Slicks, Inc.'s President, Pam Laughlin ("Laughlin"). Plaintiff holds copyrights on the various dolls it produces. Laughlin conceived of the concept of the wooden doll when she noticed that her five-year-old daughter had difficulty keeping the clothing on paper Barbie dolls. Based on this concept, Laughlin founded Country Kids, and began producing a line of wooden dolls. Plaintiff's wooden dolls all employ a similar size and shape to the traditional paper dolls.

In mid–1993, Plaintiff discovered that Vickie Sheen, a former employee of Country Kids, had begun marketing her own models of wooden dolls. Ms. Sheen's husband, Bill Sheen, Mr. Sheen's sister, LaDawn Bragg, and Mr. Flake Wells III all assisted her in this effort. Defendants, who marketed their dolls under the name "Carousel Kids," did not obtain a license to use Plaintiff's copyright and clearly had access to the design of Plaintiff's dolls. While employing the basic concept of Plaintiff's dolls, Defendants claimed that their dolls had distinctly different features (*e.g.*, hair, eyes, nose, mouth, cheeks, etc.).

After learning of Defendants' dolls, Plaintiff filed suit and requested a preliminary injunction to prevent Defendants from marketing their Carousel Kids dolls. At a hearing, Plaintiff presented evidence that Defendants lured away some of Plaintiff's sales representatives, sold their dolls at lower prices, and that some customers could not differentiate between the two brands of dolls. Defendants, however, dispute the extent of any such confusion. Plaintiff also suggested

that the competition of Defendants' dolls would force both companies into bankruptcy. The district court denied the motion for a preliminary injunction on the grounds that Plaintiff could not demonstrate either a likelihood of success on the merits or a threat of irreparable harm. Plaintiff now appeals, and we exercise jurisdiction under 28 U.S.C. § 1292(a).

## DISCUSSION

■ We consider this case on appeal from a denial of a preliminary injunction to restrain an alleged infringement of Plaintiff's copyright in violation of 17 U.S.C. § 502(a). In order to merit a preliminary injunction, Plaintiff must establish that: (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest. *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir.) (citation omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993). The district court ruled that Plaintiff failed to meet either of the first two requirements, and thus, did not make the required showing to warrant the issuance of an injunction. Accordingly, the district court declined to rule on whether Plaintiff had made the necessary showing on the third and fourth requirements necessary to support the issuance of a preliminary injunction.

■ We review the district court's denial of Plaintiff's application for a preliminary injunction to determine if the district court "abuse[d] its discretion, commit[ted] an error of law, or [wa]s clearly erroneous in its preliminary factual findings." *Autoskill*, 994 F.2d at 1487; *Atari, Inc. v. North Am. Philips Consumer Electronics Corp.*, 672 F.2d 607, 613 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Plaintiff does not argue that the district court's factual findings were clearly erroneous; [1]

---

1. Despite Plaintiff's counsel's suggestion to the contrary at oral argument, Plaintiff has not appealed the ultimate factual finding as to whether

the actual features of Defendants' dolls infringed on Plaintiff's copyright. Plaintiff's "Statement of Issues Presented For Review" explicitly limited

rather, Plaintiff focuses this appeal on the district court's legal rulings. First, Plaintiff argues that the district court incorrectly ruled that it was not likely to succeed on the merits because the court erroneously concluded that the shape and size of the dolls were not copyrightable and because the court erroneously interpreted the "substantial similarity" test that governs copyright infringement cases to require the accused product to be a "virtual copy" of the copyrighted product. Second, Plaintiff contends that the district court incorrectly ruled that Plaintiff would not suffer an irreparable injury if it was denied the requested injunction.

### A. Plaintiff's Likelihood of Success on the Merits

■ In order to prevail on its copyright infringement claim, Plaintiff must establish both: (1) that it possesses a valid copyright and (2) that Defendants "copied"[2] protectable elements of the copyrighted work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir.1993). This appeal turns on whether Defendants copied protectable elements of Plaintiff's dolls.[3] This examination involves two distinct inquiries: first, whether Defendants, as a factual matter, copied Plaintiff's work, and second, whether, as a mixed issue of fact and law, those elements that were copied were protected. *Id.* at 832. The second inquiry will require us to determine

which elements of Plaintiff's work (*e.g.*, design, shape, size and concept of Plaintiff's dolls) are protectable.

■ While the fact of copying is difficult to prove directly, Plaintiff can indirectly prove copying by establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.[4] *Gates Rubber*, 9 F.3d at 832; *see also* Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright*, § 13.01[B], at 13–10 to 13–12 (1995). A finding that Defendants copied some aspect of Plaintiff's dolls, however, would not end the court's inquiry, as liability for copyright infringement will attach only where protected elements of a copyrighted work are copied. *Gates Rubber*, 9 F.3d at 833 (citing *Baker v. Selden*, 101 U.S. 99, 101–03, 25 L.Ed. 841 (1879)). To impose such liability, the court must find substantial similarity between those aspects of Plaintiff's dolls which are legally protectable and the Defendants' dolls. *See Autoskill*, 994 F.2d at 1490.

■ Thus, the question of whether Defendants infringed on Plaintiff's copyright turns on whether Defendants' product is substantially similar to the protectable elements of Plaintiff's product. To make this determination, we find it useful to apply the "abstraction-filtration-comparison" test. *See Autoskill* 994 F.2d at 1490–98; *Gates Rubber*, 9 F.3d at 834–842.[5] At the abstraction step,

---

this appeal to the district court's purported errors of law, and Plaintiff's Reply Brief explained that "the issues raised on appeal relate to whether the trial court applied the appropriate legal standards and not whether Carousel Kids introduced evidence to support the erroneous legal tests." Rep.Br. at 2. However, as discussed *infra*, we do consider the district court's application of the law to the facts in order to discern whether the district court adopted the correct legal standard.

2. "Copying" is regularly used as a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 n. 6 (10th Cir.1993).

3. Defendants briefly argue that Plaintiff was not validly assigned the copyrights at issue, and thus, cannot sue for infringement. However, because

the district court did not rule on this issue below, we do not consider it on appeal.

4. While the basic inquiry looks to whether the allegedly copied work is "substantially" similar to the original work, *Autoskill*, 994 F.2d at 1490, we have explained that the degree of similarity required may vary depending on the showing of access, *Gates Rubber*, 9 F.3d at 833 n. 9. A greater showing of similarity may allow access to be inferred where it is not otherwise shown. *Id.* In the instant case, however, Defendants concede that they had access to the copyrighted work.

5. The "abstraction-filtration-comparison" test, or the "successive filtration" test, was developed for use in the context of alleged infringement of computer software, and it is exclusively in that context that we have previously applied the test. *See, e.g., Gates Rubber*, 9 F.3d at 834–39; *Autoskill*, 994 F.2d at 1491–98. However, we see no

we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar. In the instant case, Plaintiff claims that the district court erred in applying this test by filtering out the size, shape and medium of the dolls and by interpreting the "substantial similarity" standard to require virtual identity of products.

### 1. The Abstraction and Filtration Analysis

The district court ruled that although the dolls' specific features were protected, Plaintiff's copyright did not extend to the size, shape and medium of the dolls. This ruling stemmed from the court's application of the Copyright Act, which provides in relevant part that:

> [i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). This provision differentiates between expression and ideas—withholding protection for ideas so that they can remain in the public domain and provide a general benefit to society. *See, e.g., Autoskill,* 994 F.2d at 1491 ("One of the fundamentals of copyright law is that a copyright does not protect an idea, but only the expression of the idea."). However, this limit on copyright protection, although sound in theory, is often difficult to apply in practice. *See Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir.1971) ("The critical distinction between 'idea' and 'expression' is difficult to draw.").

▮▮▮▮ Because the idea/expression distinction is somewhat elusive, courts often adopt an ad hoc approach, eschewing the application of any bright line rule or any clear formula. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) ("Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression'" so such decisions must "inevitably be *ad hoc*"); *see also Gund, Inc. v. Smile Int'l, Inc.,* 691 F.Supp. 642, 644 (E.D.N.Y. 1988) (noting the absence of any statutory or judicially created criteria for this determination), *aff'd,* 872 F.2d 1021 (2d Cir.1989). However, in differentiating between an idea and a specific form of expression, it is important to remember that copyright law seeks to achieve a proper balance between competition based on public ideas and incentive to produce original work.[6] Hence, to the extent that the idea and the particular expression cannot be separated, the work cannot be protected by a copyright because "protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner." *Kalpakian,* 446 F.2d at 742; *see also Atari,* 672 F.2d at 616. Indeed, "where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 913 (2d Cir.1980).

reason to limit the abstraction-filtration-comparison approach to cases involving computer programs. *See* 3 Nimmer § 13.03[E], at 13–96 to 13–97 (The successive filtration test "should be considered not only for factual compilations and computer programs, but across the gamut of copyright law") (footnotes omitted).

**6.** The relevant caselaw addresses this theme at length. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429 (1984) (explaining that copyright law seeks to achieve a balance between "the interests of authors ... in the control and exploitation of their writings ... on the one hand, and society's competing interests in the free flow of ideas [and] information ... on the other hand."); *Meade v. United States,* 27 Fed.Cl. 367, 372 (Ct.Cl.1992) ("[I]n defining protectable expression, the court should 'neither draw the line so narrowly that authors, composers and artists will have no incentive to produce original literary, musical and artistic works, nor [should the court] draw it so broadly that future authors, composers and artists will find a diminished store of ideas on which to build their works.'") (quoting Paul Goldstein, *Copyright: Principles, Law, and Practice* § 2.3.1.2 (1989)), *aff'd,* 5 F.3d 1503 (Fed.Cir.1993).

Thus, "[s]imilarity as to standard doll features is not as indicative of copying as would be similarity of features that render the protected toy distinctive." *Id.* at 916–17.[7]

Plaintiff claims that the district court erred in not affording copyright protection to the size, shape and medium of the doll—that is, in setting the level of abstraction so low as to view the Plaintiff's wooden doll as an idea rather than as a protectable form of expression. In attempting to focus on the originality of its creation, Plaintiff invokes *Fisher–Price Toys, Div. of Quaker Oats Co. v. My–Toy Co.*, 385 F.Supp. 218 (S.D.N.Y.1974). However, *Fisher–Price* fails to advance Plaintiff's argument. In *Fisher–Price*, the court stated that even if a doll is composed of a series of different features, which in and of themselves are nonprotectable, the "original combination of these features" may render the doll protectable. *Id.* at 220. However, to the extent that certain similarities between a copyrighted work and an allegedly infringing work are inherent in a nonprotectable idea—*i.e.*, the general features of a doll—we must filter those similarities out of the comparison. *See North American Bear Co. v. Carson Pirie Scott & Co.*, No. 91 C 4550, 1991 WL 259031, at *4 (N.D.Ill. Nov. 27, 1991) ("The only features that appear similar to the ordinary observer—such as general size, shape, color and softness—are the very same features that are so inherent in the abstract idea of a teddy bear that they are not subject to copyright protection.").

In the instant case, we conclude that the district court correctly characterized the wooden form of the traditional paper doll as an idea rather than a protected expression. Plaintiffs cannot demonstrate infringement merely because Defendants produced wooden paper dolls; nor may they rely on similarities between their work and Defendants' work that necessarily stem from this unprotectable idea. *See, e.g., Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 607

(1st Cir.1988) (appellant cannot prohibit others from appropriating its idea of life-size, "realistic-looking concrete deer"; only substantial similarity in specific features could support an infringement claim); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir.1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls."); *Atari*, 672 F.2d at 617 (maze framework of PAC-MAN is "standard game device[ ]" and thus not copyrightable under doctrine of scenes a faire; only specific characters used in the game are protectable); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 825 n. 5 (11th Cir.1982) (idea of soft sculpture human-figure doll is not copyrightable); *Mattel, Inc. v. Azrak–Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir.1983) ("Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in . . . a traditional fighting pose"); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 916–17 (2d Cir. 1980) (no infringement although dolls were "mechanically identical and structurally similar," both were made of plastic and between three and four inches tall and there was similarity as to "standard doll features"; mechanical aspects of dolls not copyrightable and "all dolls attempting to express the same idea will of necessity display at least some similarity"); *Uneeda Doll Co. v. P & M Doll Co.*, 353 F.2d 788, 789 (2d Cir.1965) (idea of doll in a display box with its arm around a red and white striped pole is not copyrightable); *Ideal Toy Corp. v. Kenner Prod. Div. of General Mills Fun Group, Inc.*, 443 F.Supp. 291, 304 (S.D.N.Y.1977) (producer and licensee of "Star Wars" film not entitled to preliminary injunction against toy manufacturers, as "[t]he defendants have no more right to a monopoly in the theme of a black-robed, helmeted, evil figure in outer-space conflict with a humanoid and a smaller non-humanoid

---

7. This concept, applied here to the copyrightability of dolls, relates to the *scenes a faire* approach employed in the literary context. This approach examines "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic [to determine which] stock literary devices are not protectible by copyright." *Atari*, 672 F.2d at 616 (internal quotations and citations omitted).

robot than Shakespeare would have had in the theme of a 'riotous knight who kept wassail to the discomfort of the household' and who had conflicts with 'a foppish steward who became amorous of his mistress.") (citation omitted).

Moreover, to the extent that the shape and size of Plaintiff's dolls are not inherent in the idea of a wooden paper doll, they are typical paper doll features found in the public domain and therefore are not copyrightable. *See, e.g., Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500–01 (2d Cir.1982) (no infringement where both plaintiff and defendant produced stuffed snowmen of the same size with traditional snowman features). Plaintiff's dolls come in three sizes, and have outstretched arms and legs and turned-out feet. At the hearing on Plaintiff's preliminary injunction motion, Defendants presented numerous paper dolls similar to Plaintiff's dolls in size and shape, as well as craft books and collectors' books demonstrating that the form of Plaintiff's dolls is the traditional form of paper dolls. As the district court pointed out, "Plaintiff virtually concedes that she copied the idea herself from the paper dolls with which her daughter played." Thus, the paper doll shape and size upon which Plaintiff relies were already in the public domain and cannot be subject to copyright protection. *See Autoskill*, 994 F.2d at 1494 ("It is axiomatic that material in the public domain is not protected by copyright, even when incorporated into a copyrighted work.") (quoting 3 Nimmer § 13.03[F][4], at 13–98); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 488 (2d Cir.) (design of mechanical "Uncle Sam" banks, patented in 1886, was in the public domain, as "[t]he banks are well documented in collectors' books and known to the average person interested in Americana."), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

Our judgment that the wooden doll is a non-copyrightable idea is reinforced by the Copyright Act's focus on artistic innovation and its refusal to offer protection to utilitarian qualities. The Copyright Act's definition

of protectable pictorial, graphic and sculptural works sets out this distinction: "Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned." 17 U.S.C. § 101. Therefore, not only is the idea of a wooden doll not copyrightable, but any basic and utilitarian aspects of the dolls, such as the shape of a human body and standard paper doll poses which are both friendly and inviting and also utilitarian in their ease of manufacture and adaptability to the attachment of various wardrobes, cannot be copyrighted. *See Durham Indus.*, 630 F.2d at 913–16 (because "copyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features, of a protected work," neither idea of small, plastic walking or crawling dolls nor the mechanism that made locomotion possible were copyrightable).

Accordingly, we affirm the district court's holding that the size, shape and medium of Plaintiff's dolls are not protectable, and that copyright infringement cannot be demonstrated by Defendants' copying of these elements. The issue of which remaining features of Plaintiff's dolls may be copyrightable has not been raised on appeal, and we therefore do not address it.[8]

### 2. The Proper Test for Infringement

After filtering out the unprotectable elements of a work, a court must determine whether "those protectable portions of the original work that have been copied constitute a substantial part of the original work— i.e. a matter that is significant in the plaintiff's [product]." *Gates Rubber*, 9 F.3d at 839. This is "primarily a qualitative rather than a purely quantitative analysis, ... and must be performed on a case-by-case basis." *Id.* (citation omitted); *see also* 3 Nimmer § 13.03[A], at 13–54 ("even if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity."). Plaintiff contends that, in addition to erroneously filtering out protected elements, the district

---

8. The district court's order stated that "[t]he expression that is entitled to copyright protection is the hair, eyes, nose, ears, mouth, underwear and shoes of the dolls." We decline to pass upon this statement because that issue has not been raised on this appeal.

court incorrectly concluded that Plaintiff could not prevail unless Defendants' dolls were a "virtual copy" of Plaintiff's dolls.

The traditional test for substantial similarity is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Atari,* 672 F.2d at 614 (citation omitted). The essence of this test is whether the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics,* 274 F.2d at 489. The touchstone of the analysis is the "overall similarities rather than the minute differences between the two works." *Atari,* 672 F.2d at 618.

In this context, we believe the "ordinary observer" test is an appropriate method for the court to use in its comparison analysis. *See, e.g., Concrete Mach. Co.,* 843 F.2d at 609 (after establishing copying of protected aspects, "the trier of fact can then assess pursuant to the 'ordinary observer' test whether there is substantial similarity between the protected expression and the accused work"); *Atari,* 672 F.2d at 614 ("the ordinary observer test, in application, must take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright").

Although the district court invoked the ordinary observer test, it does not appear that this test was correctly applied. At one point in its oral ruling the district court stated that "Defendants would infringe only by copying these appliques with such detail and particularity that an ordinary observer would ... confuse a particular Carousel doll with one of the very Crayon dolls shown in Plaintiff's Exhibits One and Two." Aplt.App. 183–84. Later in its oral ruling, it ultimately concluded that an ordinary observer "would not conclude that any current doll in Defendants' production is a *virtual copy* of any given, particular doll [manufactured by Plaintiff]." Aplt.App. 184 (emphasis added).

However, a finding of substantial similarity does not require that an infringing work be a "virtual copy" of a protected one. Nor is the *sine qua non* of substantial similarity whether an ordinary observer would "confuse" the two works in their entirety. Rather, as stated above, the test is whether the accused work is sufficiently similar that an ordinary observer would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. *Atari,* 672 F.2d at 614; *see also Concrete Mach. Co.,* 843 F.2d at 607; *Educational Testing Servs. v. Katzman,* 793 F.2d 533, 541 (3d Cir.1986) (quoting *Atari,* 672 F.2d at 614). We therefore remand this case to the district court for a comparison between those features of Plaintiff's dolls which it finds protectable and Defendants' dolls under the appropriate substantial similarity test.

### B. The Irreparable Injury Standard

Our decision to reverse the district court's ruling on Plaintiff's likelihood of success on the merits requires us to consider the court's alternative ruling that Plaintiffs failed to demonstrate that they would suffer an irreparable injury without the issuance of the injunction. In ruling that Plaintiffs failed to demonstrate that they would suffer an irreparable injury, the district court found no evidence that "competition from Carousel Kids is causing substantial financial harm or a danger of Plaintiff's bankruptcy." Aplt. App. at 111. The district court did not consider whether to adopt the prevailing view in cases of copyright infringement that a showing of likelihood of success on the merits raises a presumption of irreparable harm. *See, e.g., National Football League v. McBee & Bruno's, Inc.,* 792 F.2d 726, 729 (8th Cir. 1986) ("Copyright law has long held that irreparable injury is presumed when the exclusive rights of the holder are infringed.").[9] Because the financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill, we join the overwhelming majority of our sister circuits and recognize a presumption of injury at the preliminary injunc-

9. We have previously reserved this issue as an open question. *See Autoskill,* 994 F.2d at 1498.

tion stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits.[10] Because we are remanding on the issue of copyright infringement, we cannot determine whether the presumption of irreparable injury that arises upon a finding of copyright infringement would apply here. Thus, we vacate the district court's finding of no irreparable injury and remand this issue for further proceedings consistent with this opinion.[11]

## CONCLUSION

We AFFIRM the ruling of the district court that the medium, size and shape of Plaintiff's dolls are not copyrightable features. With regard to other features of the dolls, we VACATE the rulings of the district court on the issues of substantial similarity and irreparable injury, and we REMAND for further proceedings in accordance with the principles set forth in this opinion.

---

10. *See, e.g., Concrete Mach. Co.,* 843 F.2d at 611; *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985); *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *Service & Training, Inc. v. Data Gen. Corp.,* 963 F.2d 680, 690 (4th Cir.1992); *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 267 (6th Cir.1988); *Atari,* 672 F.2d at 620; *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.,* 886 F.2d 1173, 1174 (9th Cir.1989). *But see Plains Cotton Coop. Ass'n. v. Goodpasture Computer Serv., Inc.,* 807 F.2d 1256, 1261 (5th Cir.) ("Th[e presumption of irreparable injury] rule ... is not established in this circuit. On the contrary, we have made it clear ... that preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four prong test.") (footnote omitted), *cert. denied,* 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987).

11. Plaintiffs also contend that the district court erred in requiring a finding that the infringement would lead to a threat of bankruptcy. Defendants respond that the district court's finding that "[t]he evidence is not at all persuasive that Plaintiff is in danger of going broke because of Defendant's efforts," Aplt.App. at 185, was premised on Plaintiff's theory of the case. We do not address that issue on this appeal. However, we do note that the legal standard of irreparable injury can be satisfied through a showing lesser than the threat of bankruptcy. *See, e.g., Autoskill,* 994 F.2d at 1498 (evidence that plaintiff would suffer "loss of uniqueness in the marketplace," that defendant's copied product could "affect [plaintiff's] reputation" and that plaintiff could not ascertain how many customers were lost to defendant sufficient to support finding of irreparable harm).